**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosemary Denogean,<br><br>    Plaintiff,<br><br>v.<br><br>San Tan Behavioral Health Services LLC,<br><br>    Defendant. | No. CV-16-03573-PHX-DGC<br><br>**ORDER** |

Plaintiff Rosemary Denogean filed a complaint against her former employer, Defendant San Tan Behavioral Health Services LLC, alleging violations of the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501, and the False Claims Act ("FCA"), 31 U.S.C. § 3730. Doc. 1. Plaintiff has moved to dismiss Defendant's counterclaim (Doc. 48) and Defendant has moved for summary judgment (Doc. 49). The motions are fully briefed, and no party has requested oral argument. For the reasons that follow, the Court will grant Plaintiff's motion to dismiss and deny Defendant's motion for summary judgment.

**I.   Background.**

The following facts are undisputed. Plaintiff worked as a billing specialist for Defendant for 4.5 years. Doc. 54 at 5 ¶ 1. On August 25, 2016, Plaintiff discovered an abnormality in the billing system and reported it to her supervisor, Maritza Romero. *Id.* at 6 ¶¶ 9-10; Doc. 54-3 at 26-27. In late August, co-worker Amy Napoleon reported the

same abnormality to Defendant's co-owner, Melissa Nelson. Doc. 50 ¶ 12; Doc. 50-1 at 37. During the ensuing investigation of the abnormality, Defendant received a report that Plaintiff might have trained employees to falsify signatures on billing records. Doc. 50-1 at 41-42. Defendant placed Plaintiff on administrative leave on August 29 to investigate the allegation. Doc. 54-3 at 42.

Later that day, Defendant determined that Plaintiff was not at fault for the billing issues. Doc. 50 ¶ 21; Doc. 54 at 8 ¶ 25. Plaintiff returned to work on August 30, but was out sick on August 31. Doc. 54 at 8 ¶¶ 27, 29. On the evening of August 31, Romero informed Plaintiff over the phone that the billing fraud investigation had uncovered emails in which Plaintiff sent personal health information ("PHI") to her personal email address in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). Doc. 54 at 9 ¶ 32.

Before 9:00 a.m. on September 1, Plaintiff went to work where she met with Nelson and Romero. Doc. 50-1 at 42 (Nelson testifies that Plaintiff was in the office before 8:10 a.m.); Doc. 54 at 9 ¶¶ 35-36. After a verbal argument, Romero asked Plaintiff to leave the premises until further notice. Doc. 50 ¶ 28; Doc. 54 at 9 ¶ 36. Defendant then sent Plaintiff a letter at 9:02 a.m. placing her on administrative leave while Defendant investigated possible HIPAA violations. Doc. 50 ¶ 26; Doc. 54 at 9 ¶ 37. The letter did not mention insubordination. Doc. 50-1 at 55.

During the afternoon of September 1, Defendant's president called Plaintiff to terminate her employment. Doc. 50 ¶ 30; Doc. 54 at 10 ¶ 38. Defendant also sent Plaintiff a letter stating the reasons for her termination:

> Failure to abide by [San Tan] protocals [sic] and procedures which resulted in the unauthorized use of client confidential information sent to a personal email which is a HIPAA violation.
>
> Insubordination- not following specific instructions during the course of an internal confidential investigation[.]

Doc. 50-1 at 61.

**II. Plaintiff's Motion to Dismiss.**

A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Defendant's abuse of process counterclaim alleges as follows: "*Through the filing of the Complaint in this action*, [Plaintiff] has willfully misled this court based upon the knowingly false allegation that her termination was retaliatory based upon her reporting of billing fraud." Doc. 8 at 7 ¶ 19 (emphasis added). Plaintiff argues that filing a complaint does not constitute abuse of process as a matter of law. Doc. 48 at 4. Defendant counters that Plaintiff abused the judicial process by filing a complaint containing false allegations. Doc. 51 at 3-4.

The elements of an abuse of process claim are "(1) a willful act in the use of judicial process, (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017) (internal quotation marks omitted). Unlike the tort of malicious prosecution, which covers the initiation of civil proceedings with malice and without probable cause, abuse of process addresses misuse of process after proceedings have been initiated. *See Joseph v. Markowitz*, 551 P.2d 571, 573-74 (Ariz. Ct. App. 1976).

Plaintiff's motive for filing the complaint, even if improper, cannot support an abuse of process claim because "abuse of process requires some act beyond the initiation of a lawsuit[.]" *Id.* at 575. Abuse of process "is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Id.* at 574 (internal quotation marks and citation omitted). Courts have "explicitly rejected the contention

that the initiation of a lawsuit can constitute the necessary act" for abuse of process. *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 697 (9th Cir. 1981) (citation omitted). Courts also have held that an abuse of process claim will not lie where a lawsuit initiated in bad faith is "continued without justification." *Morn v. City of Phx.*, 730 P.2d 873, 876 (Ariz. Ct. App. 1986). Plaintiff's "mere persistence in [this] litigation, even if based on an improper motive, does not sustain the tort." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 888 (Ariz. Ct. App. 2004). Defendant's counterclaim, which is based entirely on Plaintiff's initiation and prosecution of this lawsuit, fails to state a claim for abuse of process.

Plaintiff's reply memorandum asks the Court to award her attorneys' fees for defeating the counterclaim. Doc. 52 at 2. The Court will not grant relief requested for the first time in a reply memorandum, and will address requests for attorneys' fees, if warranted, at the close of this case.

### III. Defendant's Motion for Summary Judgment.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

#### A. Count One: Retaliation in Violation of the AEPA.

Plaintiff contends that Defendant violated the AEPA by firing her for reporting what she suspected to be billing fraud. Doc. 1. The AEPA provides that an employee has an actionable claim when:

> The employer has terminated the employment relationship of an employee in retaliation for any of the following:
>
> * * *
>
> (ii) The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state . . . .

A.R.S. § 23-1501(3)(c); *Galati v. Am. W. Airlines, Inc.*, 69 P.3d 1011, 1013 (Ariz. Ct. App. 2003) (an employee may bring a wrongful termination action "when the employer terminates an employee in retaliation for . . . reporting violations of Arizona law to the employer's management or other investigative authority") (citing A.R.S. § 23-1501(3)(c)(i), (ii)). To prevail, Plaintiff must establish: (1) she had information or a reasonable belief that her employer or another employee had violated an Arizona statute or constitutional provision; (2) she disclosed the information or belief to an employer or a representative of the employer whom she reasonably believed was in a managerial or supervisory position and had the authority to investigate the information and take action to prevent further violations of the Arizona constitution or statutes; and (3) she was terminated because of the first two steps. A.R.S. § 23-1501(3)(c)(ii). Defendant argues that Plaintiff cannot establish any of these elements. *See* Doc. 49 at 6-9.

### 1. Reasonable Belief of State Law Violation.

Defendant contends that Plaintiff had no reasonable belief of a state law violation because the record shows that there was no billing fraud. Doc. 49 at 7-8. But the AEPA requires only that Plaintiff have a "reasonable belief" that Defendant violated state law. A.R.S. § 23-1501(3)(c)(ii). An actual violation need not be proven. *See Murcott v. Best W. Int'l, Inc.*, 9 P.3d 1088, 1096 (Ariz. Ct. App. 2000).

Plaintiff discovered digital signatures on amended billing records with timestamps suspiciously close to each other. *See* Doc. 53 at 2-3; Doc. 54 at 6 ¶¶ 9-12. She suspected that at least one San Tan billing specialist could have fraudulently applied a clinician's digital signature on outgoing billing records. *Id.*; *see* Doc. 54-3 at 37 (Plaintiff told Romero that records may not have received clinician approval). Indeed, Napoleon surmised – based on the same discovery – that at least one San Tan billing specialist could have been editing the billing records, applying a clinician's signature without permission, and submitting the billing records for payment. *See* Doc. 54-3 at 34-35. Defendant does not address these reasons for suspecting billing fraud (*see* Doc. 55), but simply relies on the fact that no actual fraud was discovered (Doc. 49 at 7-8). Defendant has not shown as a matter of undisputed fact that Plaintiff lacked a reasonable belief that Defendant committed billing fraud.

What is more, Plaintiff's state of mind presents a jury question. As Arizona courts have noted, "absent a person's outright admission regarding [her] state of mind, [her] mental state must necessarily be ascertained by inference from all relevant surrounding circumstances." *In re William G.*, 963 P.2d 287, 292 (Ariz. Ct. App. 1997). Contrary to Defendant's assertion, Plaintiff's inability to name a clinician who actually committed billing fraud does not suggest that Plaintiff lacked a reasonable suspicion of billing fraud. *See* Doc. 49 at 8.

### 2. Reporting.

Defendant contends that Napoleon was the first to report the suspected billing fraud, and Plaintiff was only interviewed as part of the ensuing investigation. Doc. 49 at 8. Plaintiff counters that she in fact reported the fraud to her supervisor. Doc. 53 at 8.

The AEPA requires disclosure of a violation to an employer or a representative of the employer whom the employee reasonably believed was in a managerial or supervisory position and had the authority to investigate the information and take action to prevent further violations. A.R.S. § 23-1501(3)(b); *Galati*, 69 P.3d at 1013. The

AEPA's language does not limit its protection to the first employee to report an issue, and Defendant does not cite any case interpreting the AEPA in such a way.

And even if Plaintiff needed to be first, there is a dispute of fact as to whether she was first. Plaintiff reported the issue to her supervisor on August 25 (Doc. 54-3 at 26-27), and Napoleon reported it on an unspecified date in late August (Doc. 50-1 at 37). Defendant has not shown as a matter of undisputed fact that Napoleon was first.

### 3. Causation.

Causation is analyzed using a two-part burden-shifting scheme: "an employee must prove that the conduct at issue was . . . protected [under the AEPA], and that it was a substantial or motivating factor in the termination. If the employee discharges that burden, the [defendant] can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." *Revit v. First Advantage Tax Consulting Servs., LLC*, No. CV10-1653-PHX-DGC, 2012 WL 1230841, at *4-5 (D. Ariz. Apr. 12, 2012) (quoting *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996)).

Defendant contends that Plaintiff has only a self-concocted theory of causation. Doc. 49 at 7. Plaintiff counters that the timing of her termination – seven days after she reported the suspected billing fraud – is sufficient to create an inference of causation. Doc. 53 at 8. In other contexts, courts have held that "[t]he causal link between a protected activity and the alleged retaliatory action 'can be inferred from timing alone' when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)). The Ninth Circuit has cautioned, however, that timing can show causation only when the termination "occurred fairly soon after the employee's protected expression." *Villiarimo*, 281 F.3d at 1065 (internal quotation marks omitted). The *Villiarimo* court held that "[a] nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation." *Id.*

The Ninth Circuit has inferred causation from an employee's termination less than three months after the employee's protected activity. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (less than three months); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (less than two months). Here, Defendant terminated Plaintiff seven days after she reported suspected billing fraud. Under Ninth Circuit law, this evidence is sufficient to create a genuine dispute of fact regarding causation. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]e have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant.").

Defendant argues it would have terminated Plaintiff's employment in any event due to her HIPAA violation and insubordination. Doc. 49 at 8-9. Plaintiff contends that that these reasons are pretextual. Doc. 53 at 9-10. This dispute presents a question of fact that must be resolved by the jury.

Defendant has not established as a matter of undisputed fact that it would have fired Plaintiff for a HIPAA violation. Plaintiff asserts that Defendant did not take HIPAA seriously, noting that a supervisor discovered Plaintiff's use of HIPAA information in personal emails in February 2016. Doc. 53 at 10. Yet the supervisor only asked: "Why are you using your personal email?" Doc. 50-1 at 32. No disciplinary action followed. Doc. 54-3 at 19-20. And although each employee received annual HIPAA training, Defendant's management appears to be unaware of specific HIPAA obligations. *See* Doc. 54-3 at 7, 24 (Nelson and Romero were, for the most part, unaware of specific HIPAA guidance contained in annual training); Doc. 54-3 at 10-11 (Nelson never audited employees to ensure HIPAA compliance); Doc. 54-3 at 17-18 (Romero opines that Plaintiff committed a HIPAA violation by sending PHI to her unsecured email, but finds no HIPAA violation in sending PHI from an unsecured email to a San Tan server).

Defendant has also failed to establish as a matter of undisputed fact that Plaintiff was insubordinate. Defendant suggests that Plaintiff received both verbal and written

- 8 -

notice not to return to work on September 1 (Doc. 49 at 4-5), but Plaintiff disputes that anyone told her to stay home from work on the evening of August 31 (Doc. 54 at 9 ¶ 34). And Defendant delivered written notice only *after* Plaintiff had left work on the morning of September 1. Doc. 50-1 at 42; Doc. 54 at 9 ¶¶ 35-36.

These factual issues preclude summary judgment on Count One.

### B. Count Two: Retaliation in Violation of the FCA.

The Ninth Circuit has explained claims for retaliation under the FCA as follows:

> The False Claims Act protects "whistle blowers" from retaliation by their employers. Thus, the False Claims Act makes it illegal for an employer to "discharge[], demote[], suspend[], threaten[], harass[], or in any other manner discriminate[ ] against [an employee] in the terms and conditions of employment . . . because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section . . . ." 31 U.S.C. § 3730(h). An employee must prove three elements in a § 3730(h) retaliation claim: (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity.

*Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) (citation omitted).

Defendant contends that Plaintiff failed to follow the procedures set forth in 31 U.S.C. § 3730(b). Doc. 49 at 9-10. Plaintiff counters that she was not required to follow those procedures because she did not file a complaint on behalf of the United States under § 3730(b); she filed a complaint for retaliation under § 3730(h). Doc. 53 at 11-12. Defendant's reply does not address this argument, and provides no basis for the Court to conclude that Plaintiff was required to follow the procedures of § 3730(b) for her claim under § 3730(h). Doc. 55.

Defendant also repeats its AEPA arguments that Plaintiff did not report the billing fraud and cannot establish causation. Doc. 49 at 9-10. For reasons explained above, these arguments do not provide a basis for summary judgment.

### C. Damages.

Defendant contends that Plaintiff's claims must be dismissed because she failed to provide a computation of damages before the discovery deadline. Doc. 49 at 10. Plaintiff admits that she did not provide a computation as required by Rule 26(a)(1), but argues that this error is harmless because her damages were revealed through other discovery. Doc. 53 at 12-13. Plaintiff also notes that she provided a computation of damages approximately one month after the discovery deadline. *Id.* at 13. Plaintiff contends that this error does not justify summary judgment where Defendant cannot show prejudice. *Id.*

When a party fails to provide information required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

Plaintiff provides a basis for concluding that her discovery violation is harmless, and Defendant does not challenge that basis. Doc. 55. Because the violation was harmless, Plaintiff's damages computation cannot be excluded from evidence under Rule 37(c) and her error provides no basis for summary judgment or sanctions.

**IT IS ORDERED:**

1. Plaintiff's motion to dismiss (Doc. 48) is **granted**.
2. Defendant's motion for summary judgment (Doc. 49) is **denied**.

3. The Court will hold a telephonic hearing on **November 20, 2017 at 4:30 p.m.** to set a final pretrial hearing and trial. Counsel for Plaintiff shall initiate the conference call to include counsel for Defendant and the Court. If a dial-in number is used, counsel for Plaintiff shall advise the Defendant and the Court of the dial-in number no later than November 17, 2017 of the dial-in information.

Dated this 31st day of October, 2017.

_____
David G. Campbell
United States District Judge